FRUGÉ, Judge.
This case and its companion case, City of Lake Charles v. Firemen’s Pension and Relief Fund for the City of Lake Charles, et al. also before this court and decided this day, arise out of the interpretation of certain subsections of Section 9 of Act No. 378 of 1968.[1] Section 9 reads as follows:
“Section 2. That Section 9 (as amended by Act 243 of 1952), of Act 186 of 1944 be amended and re-enacted to read as follows:
“Section 9. The Firemen’s Pension and Relief Fund shall consist of the following :
“(1) All monies, funds, properties, real and personal, and assets now belonging to or due the presently existing Firemen’s Pension and Relief Fund of the City of Lake Charles.
“(2) All rewards, gifts or emoluments that may be paid for or on account of extraordinary service of said Fire Department, except when given to a individual member or given to endow a medal or other permanent reward.
“(3) Four (4%) per cent of the salary of all employees of the Fire Department who are eligible for participation in the benefits of this Fund, shall be deducted from their respective salaries monthly and paid into the said Fund.
“(4) A sum equal to Four (4%) per cent of the total salary of all the employees of the Fire Department who are eligible for participation in the benefits of this Fund, to be paid into the Fund by the City of Lake Charles; the said City of Lake Charles being hereby authorized and directed to appropriate and to pay over into said Fund annually a sum equal to the total sum paid over into the Fund from the payroll deductions of all employees of the Fire Department who are eligible for participation in the benefits of this Fund.
"(5) The City of Lake Charles and The Ward Three Fire Protection District of Calcasieu Parish are authorized and directed to pay to the Firemen’s Pension and Relief Fund, annually the amount received by them as rebate on fire insurance premiums of foreign companies, or as insurance contributions otherwise paid to the City of Lake Charles and Ward Three Fire Protection District of Calcasieu Parish by the State of Louisiana in connection with fire insurance ; exclusive of any sum of money paid into the Firemen’s Pension and Relief Fund from rewards or gifts, and any sum of money paid by deductions from the salary of the members of the Lake Charles Fire Department.
“(6) The City of Lake Charles is authorized and directed to contribute an annual sum in order to maintain a $300,-000.00 reserve at all times for pensions and other benefits provided by this Act. However, the City of Lake Charles shall not be required to contribute an amount in excess of the following:
A) $25,000.00 for the year 1968,
B) $50,000.00 for the year 1969,
C) $60,000.00 for the year 1970,
*624 D) $70,000.00 for the year 1971,
E) $80,000.00 for the year 1972,
F) $90,000.00 for the year 1973, and
G) $100,000.00 for the year 1974 and for each succeeding year thereafter in order to maintain the said reserve. The City of Lake Charles shall be obligated and directed to contribute a sum of not less than $25,000.00 each year regardless of the fact that the reserve of $300,000.00 may thereby be exceeded.
“(7) All monies required to be paid into the Firemen’s Pension and Relief Fund by the City of Lake Charles shall be paid into said Fund by the said City of Lake Charles during December of each year.
The portions of Act No. 378 which are involved in these suits are Sections 4, 5, and 6. Basically, the Firemen’s Fund contended in both suits that the provisions are cumulative so that each year a sum must be contributed to the fund equal to 4% of the total salary of Fire Department employees who are eligible to participate in the fund, plus the total amount received by the City of Lake Charles and the Ward Three Fire Protection District of Calcasieu Parish as rebates on fire insurance premiums of foreign companies or as insurance contributions otherwise paid to those two entities by the State of Louisiana, and a minimum sum of $25,000. The plaintiff-appellee, in the case before us, asked that an order of mandamus issue directed to the Mayor of Lake Charles directing that he issue to the Firemen’s Fund a check or checks in payment of accrued amounts due under Section 9 of Act 186 of 1944 as amended — specifically a sum equal to 4% of the total salary of all employees of the Fire Department of Lake Charles for the years 1968, 1969, 1970, and 1971 and, in addition, a sum of not less than $25,000 each year for the years 1968, 1969, 1970, and 1971 (payment of rebates under Subsection 5 had already been made for the years in question). The City of Lake Charles answered this suit and filed a petition for Declaration Judgment in the suit, City of Lake Charles v. Firemen’s Pension and Relief Fund for the City of Lake Charles et al., asking for a declaration of rights concerning all of Subsection 9, and primarily maintaining that the City of Lake Charles is required to pay 4% of the total salary of all employees of the Fire Department, which 4% can be made up of contributions from the General Fund or from rebates received, and further that it is only when by such payment the fund remains below $300,000 that the minimum payment of $25,000 is required to be made, i. e. Sections 4, 5, and 6 are not cumulative.
The trial court, in a consolidated trial of the suits, found in favor of the Firemen’s Fund as to the cumulative nature of Sections 4 and 5, and ordering the appropriate checks be issued for fiscal years 1968-1969, and 1969-1970, but found in favor of the City as to Section 6, i. e. that the $25,000 payment be made only when without such payment the fund would remain below $300,000. The City has appealed and the Firemen’s Fund has answered in part but did not, in the answer, request a change in the judgment as it denied recovery under Subsection (4) for the fiscal years 1967-1968 and 1970-1971. We affirm.
The original legislation in this field was Act No. 186 of 1944 which read in appropriate part as follows:
“Section 9. The Firemen’s Pension and Relief Fund shall consist of the following :
“1. All rewards, gifts, or emoluments that may be paid for or on account of extraordinary service of said Fire Department, except when given to an individual member, or given to endow a medal or other permanent reward.
“2. Two per cent of the salary of all employees of said Fire Department who are eligible for participation in the benefits of this Fund, shall be deducted from their respective salaries monthly and paid into the said Fund.
*625 “3. The City of Lake Charles is authorized and directed to pay to the Firemen’s Pension and Relief Fund annually such sum, not exceeding Twenty Five Hundred and no/100 ($2500.00) Dollars, as may be received annually by the City of Lake Charles, as rebate on fire insurance premiums of foreign companies or as insurance contributions or funds otherwise paid to the City of Lake Charles by the State of Louisiana in connection with fire insurance. If the amount received by said City from said rebate or contributions does not equal Twenty Five Hundred and no,/100 ($2500.00) Dollars for any annual period, the said City of Lake Charles is hereby authorized and directed to pay from its General Fund to the Firemen’s Pension and Relief Fund such amount as will be required to provide a total payment of Twenty Five Hundred and no/100 ($2500.00) Dollars annually, exclusive of any sums of money paid into the Firemen’s Pension and Relief Fund from rewards or gifts and any sums of money paid by deductions from the salary of the members of the Luke Charles Fire Department.
“4. The City of Lake Charles is authorized and directed to annually budget and appropriate to the Firemen’s Pension and Relief Fund to supplement the said annual rebate and contributions to make the total of Twenty Five Hundred and no,/100 ($2500.00) Dollars, as provided for hereinabove, and the City is authorized and directed to pay said funds to the Firemen’s Pension and Relief Fund during October of each year. For the first year’s fund, the City of Lake Charles is authorized and directed to transfer from its Fire Insurance Fund to the Firemen’s Pension and Relief Fund the amount of Twenty Five Hundred and no/100 ($2500.00) Dollars, which said transfer and payment shall be made during October 1944.” (Emphasis added).
It is the emphasized exclusion clause above which appears in the 1968 amendment of Act 186 of 1944, that is the basis for the claim of the City of Lake Charles that provisions 4, 5, and 6 are non-cumulative. It is the City’s position that since this clause, as it appears in the 1968 Act, does not include mention of the 4% matching obligation or the minimum $25,000 payment (6-G), they are not excluded from consideration in making up the payment under Section 5. The City’s position was stated in their brief as follows:
“ . . .at best the City is required only to pay 4% of the total payroll of those employees eligible to participate in the fund from 1968 until 1970 and 4% of the total payroll of the Fire Department of 1971 and that this 4% could be made up either from the General Fund or from the insurance rebate. At worst the City would be required to pay 4% of the total payroll of those employees eligible to participate in the funds from 1968 until 1970 and 4% of the total payroll of all employees for 1971 or the fire insurance rebates whichever is greater. This latter interpretation is the interpretation given by the Major of the City of Lake Charles.
“ . . .If after the payment is made the reserve falls below $300,000.00, then the City must contribute in an amount not to exceed the amounts set out under the Subsection in Subsection (6).”
Before commenting on this argument, we find it appropriate to briefly review the amendments made to Act 186 of 1944. This Act was amended by Act 79 of 1946 to read:
“Section 1. Be it enacted by the Legislature of Louisiana, that Subsections 3 and 4 of Section 9 of Act No. 186 of 1944 be amended and re-enacted so as to read as follows:
“3. The City of Lake Charles, is authorized and directed to pay to the Firemen’s Pension and Relief Fund annually the amount received by the City of Lake Charles as rebate on fire insurance pre- *626 tniums of foreign companies or as insurance contributions or funds otherwise paid to the City of Lake Charles by the State of Louisiana in connection with fire insurance, exclusive of any sums of money paid into the Firemen's Pension and Relief Fund from rewards or gifts and any sums of money paid by deductions from the salary of the members of the Lake Charles Fire Department.
“4. The City of Lake Charles is authorized and directed to pay said funds to the Firemen’s Pension and Relief Fund during October of each year.” (Emphasis added)
The major change here was to delete reference to the fixed amount of contribution ($2,500) which was provided for in the 1944 Act. The City now had to pay in all rebates on fire insurance premiums of foreign companies and other insurance contributions and funds received from the State in connection with fire insurance. The exclusion clause remained.
By Act 243 of 1952, a new subdivision, Subsection 5, was added to Section 9:
“Section 3. Section 9 of Act No. 186 of 1944 as amended by Act No. 79 of 1946 and Act No. 48 of 1950 is amended by adding thereto a new paragraph to be designated as Paragraph 5.
“5. The City of Lake Charles is authorized and directed to pay annually to the Firemen’s Pension and Relief Fund fifteen (15%) per centum of the amount received by the City of Lake Charles from its parking meters. (Note. Act No. 48 of 1950 did not affect Section 9).
It should be remembered that the exclusion clause was still present at this time in Subsection 3 as per Act No. 79 of 1946. However, the act, thus amended, was interpreted by the Mayor of Lake Charles to mean that the Sections 3 and 5 were cumulative, i. e. the parking meter income was to be paid in addition to the insurance rebates.
Act No. 186 of 1944 was amended again as previously set forth in 1968 and 1970.
The first question to which we address ourselves is whether Subsections 4 and 5 of the 1968 Act were cumulative. Great weight must be accorded administrative interpretations of the meaning and effect of statutes and language therein where such statute or language is vague and its meaning in doubt. Roberts v. City of Baton Rouge, 236 La. 521, 108 So.2d 111 (1958). After the 1952 amendment, Act No. 186 of 1944 was structurally very similar to its present formation, i. e., there was Subsection 3 providing for the payment of rebates and other funds and including the same exclusion clause which has appeared in the Act since 1944. Following Subsection 3 was Subsection 5 providing for the payment of 15% of the monies received from parking meters. The exclusion clause of Subsection 3 did not mention Subsection 5 and according to the present argument of the Mayor and the City of Lake Charles, Subsections 3 and 5 could not be cumulative. However, the Mayor of Lake Charles held that the effect of the exclusive clause was not to prevent such cumulation and found instead, that the payments under both Subsections were cumulative and had to be paid in full.
We find the above interpretation of the effect of the exclusion clause most persuasive in determining the question of cumulation of benefits under Subsections 4 and 5 of the present Act. Had the legislature intended that Subsection 5 be a mere source of revenue from which to supplement payments under Subsection 4 in order to reach the 4% matching fund figure, (the City’s principle argument), they could have explicitly provided for such supplementation as was done in Subsection 3 of Act No. 186 of 1944 in relation to the $2,500 contribution of the City. They did not and we cannot read into the Act words that are not printed. If the legislature had intended to provide for the yearly payment of the greater of an amount equal to 4% of the salaries of eligible firemen or the amount *627 of rebates and other insurance funds received, such intent was no doubt capable of better expression than inference from exclusionary language.
In 1944 the only section setting forth a required contribution by the City was Subsection 3. It was within this Subsection dealing with rebates that the exclusion clause first appeared. Its purpose was to make certain that the City could not offset its obligation with payments made by the firemen. In 1946, the same clause appeared for the same reason in the only subsection providing for contributions by the City — Subsection 3 dealing with rebates. In 1952, 1968, and 1970, the same clause appeared in the subsection dealing with the payment of rebates. The number of the subsection was changed to (5) in 1968 following the addition of another requirement of contribution by the firemen— 4% of the salaries of eligible firemen (found in Subsection 3). We believe that Subsection (4) of the 1968 version provides for a matching fund obligation on the part of the City (commensurate with the 4% obligation placed on the firemen the same year) in addition to the requirement of the payments of rebates — much the same as the Subsection (5) of the 1952 version provided for a contribution obligation on the part of the City in addition to the payment of rebates. The exclusion clause language was carried over to 1968 for the same reason it was present in 1944, and it was found in the same type of subsection — that dealing with rebates.
As to Subsection (6), the language of this Subsection makes it clear that money is to be paid under it only when the payment of monies under Subsections (l)-(5) leaves the fund below $300,000 for a given year. If this occurs, then Sections (A)(F) and the first part of (G) of Subsection (6) provide for maximum amounts that can be paid in certain years in order to attempt to reach the goal of $300,000i The last part of Section (G) provides that if the fund falls below $300,000 for any year, thereby necessitating any expenditure to bring it up to $300,000, the minimum amount that must be paid is $25,000 even though the expenditure of such amount would cause the fund to go over $300,000. In other words, if in 1971, the fund, after payment under Subsections (l)-(5), was still below $300,000, under Section (D) a maximum of $70,000 could be paid by the City in order to reach the $300,000 mark. However, perhaps the fund would be only $10,000 short. In this case, according to Section (G), the payment of $25,000 would have to be made even though this would bring the fund over $300,000. This is the interpretation of Subsection (6) that we accept.
The Firemen’s Fund maintains that Section (G) provides for the payment of $25,-000 each year even though payments under (l)-(5) have caused the fund to reach or exceed $300,000. Section (G) reads:
“ . . . The City of Lake Charles shall be obligated and directed to contribute a sum of not less than $25,000.00 each year regardless of the fact that the reserve of $300,000.00 may thereby be exceeded.” (Emphasis added.)
The word “thereby” is proof that the minimum payment of $25,000 is only to be made when, before payment of the $25,000 and after payment under Subsections (1) — (5), the fund is under $300,000 — payment of the $25,000 must then be made although such payment may thereby cause the fund to exceed $300,000.
The trial court found Subsections 4 and 5 of Act No. 186 of 1944 as amended by Act No. 378 of 1968 cumulative and ordered the Mayor of Lake Charles, on behalf of the City, to commence at once to issue a check or checks in payment of the accrued amount due under Section 9 of Act 186 of 1944 as amended — specifically a sum equal to 4% of the salary of all employees of the Fire Department who were eligible for participation in the Fund for the fiscal years beginning October 1, 1968, and ending September 30, 1969, and beginning October 1, 1969, and ending September 30, *628 1970. The court further found in accordance with our views as to the purpose and effect of Subsection 6 of Act No. 186 of 1944 as amended and did not order any contribution under Subsection 6 because the fund had not fallen below $300,000 for any of the contested years. We affirm. Parties to this appeal are to pay their respective costs.
Affirmed and rendered.

. This act was subsequently amended by Act No. 236 of 1970 but this amendment does not affect tlie years presently under consideration by this court. Furthermore, changes made by that amendment are not relevant to the question before us. Note. Act No. 236 of 1970 did prospectively remove the limitation of Subsections 3 and 4 that only employees eligible to participate in the fund are to be considered in determining amounts under those Subsections. This accounts for some of the incongruities between the cited language in the pleadings and the trial court’s award.