276 So.2d 727 (1973)
FIREMEN'S PENSION AND RELIEF FUND FOR the CITY OF LAKE CHARLES, Plaintiff and Appellee,
v.
James E. SUDDUTH, Mayor of the City of Lake Charles, Defendant and Appellant.
No. 4165.
Court of Appeal of Louisiana, Third Circuit.
April 25, 1973.
*729 Peter A. Ciambotti, Lake Charles, for defendant and appellant.
Cox & Cox by James J. Cox, Lake Charles, for plaintiff and appellee.
Before FRUGE, HOOD and CULPEPPER, JJ.
CULPEPPER, Judge.
The Firemen's Pension and Relief Fund for the City of Lake Charles seeks a writ of mandamus directing James E. Sudduth, Mayor of the City of Lake Charles, to pay into the fund a sum equal to 4% of the total salary of all employees of the Fire Department of the City of Lake Charles for the fiscal year 1970-1971, as required by Subsection (4), Section 9, Act 186 of 1944, as amended. The defendant filed an exception of res judicata, based on the judgment rendered in Firemen's Pension and Relief Fund for the City of Lake Charles v. James E. Sudduth, 265 So.2d 622 (La.App., 3rd Cir. 1972). The district judge overruled the exception and granted the writ. Defendant appealed.
The issues are: (1) Should the exception of res judicata be sustained? (2) Should mandamus be granted against the mayor alone, without the city or the members of its council being made parties?
The facts are that in the previous suit between these same parties the plaintiff prayed for a writ of mandamus directing the mayor to pay into the fund the contributions for the years 1968, 1969, 1970 and 1971. However, at the time the petition in that suit was filed on October 26, 1971, the matching funds for the fiscal year 1970-1971 were not yet due. Subsection (7), Section 9 of Act 186 of 1944, as amended by Act 378 of 1968 and Act 236 of 1970, expressly provides:
"All monies required to be paid into the Firemen's Pension and Relief Fund by the City of Lake Charles shall be paid into said fund by the said City of Lake Charles during December of each year."
The fiscal year 1970-1971 for the City of Lake Charles ended on September 30, 1971. Therefore, the sums due for that fiscal year were not required to be paid until some time during December of 1971. Accordingly, the mayor took the position that the claim for the 1970-1971 payment was premature. The mayor included in his answer to the previous suit the following paragraph:
"The prayer of the petition asks that the Mayor of the City of Lake Charles show cause why he should not pay certain amounts for the year 1971 when under the terms of Section 9, Subsection 7, payments required to be paid into the Firemen's Pension and Relief Fund by the City of Lake Charles are not to be paid until December of each year."
On November 23, 1971, the previous case was tried, evidence introduced and closed, and the case was submitted on oral arguments of counsel. On that same day the district judge dictated oral reasons granting the writ of mandamus and ordering the defendant mayor of the City of Lake Charles to pay into the fund "the sums necessary to comply with the statute as interpreted by the court." Formal judgment to this effect was rendered on February 7, 1972 ordering payment "for the fiscal years beginning October 1, 1968 and ending September 30, 1969, and beginning October 1, 1969 and ending September 30, 1970."
It is obvious the reason no payment for the fiscal year 1970-1971 was required was that at the time the case was tried, the evidence closed, the matter submitted on oral argument and decided by the district judge on November 23, 1971, the 1970-1971 payment was not yet due. When the judgment was signed on February 7, 1972 there was no evidence in the record to show whether or not the City of Lake Charles had paid the sum due in December of 1971, since the evidence was closed in November of 1971. Hence, the court could not order payment of the 1970-1971 contribution.
*730 The previous case was appealed by the mayor. The Firemen's Fund answered the appeal, requesting certain changes in the judgment, but did not request a change as to the denial of the 1970-1971 payment. We affirmed the district court judgment.
As shown by the decision reported in 265 So.2d 622, the principal issue on appeal was whether the matching fund obligation by the city, which was added to the statute by amendment under Act 378 of 1968, was cumulative with other subsections of the statute requiring payments to the fund from other sources. This was a purely legal question involving statutory construction. We held these payments were cumulative, and that the matching funds were due by the city for the fiscal years 1968-1969 and 1969-1970. There was no issue before the Court of Appeal as to the 1970-1971 payment, and hence our judgment made no ruling in that regard.
Our statutory law of res judicata is stated in LSA-C.C. Article 2286 as follows:
"The authority of the thing adjudged takes place only with respect to what was the object of the judgment. The thing demanded must be the same; the demand must be founded on the same cause of action; the demand must be between the same parties, and formed by them against each other in the same quality."
State v. American Sugar Refining Company, 108 La. 603, 32 So. 965 (1902), is a landmark case construing Article 2286. It involved a factual situation similar to the present matter. There, the prior suit, under a statute imposing a license on refiners of sugar, was for the licenses for 1898 and previous years. The issue was whether a "refiner" of sugar was a "manufacturer", and as such exempt from license taxation under the constitution. The court held in the first case that the refiner was not a manufacturer, and thus was not exempt. Two years later, the State filed a second suit for the licenses for the years 1900 and 1901. The defendant's answer again contended it was a manufacturer. To this contention plaintiff filed a plea of res judicata based on the former suit. The court overruled the exception on the grounds that the first suit involved only a question of law, i. e., the construction of the statute, and said "there can be no objection to litigating a second time a question of law, provided the litigation is in connection with different facts." In explanation, the court stated:
"The basic principle of res judicata is found in the necessity that a time should come when the litigation shall cease, in order that the decree of the court may be carried out. This is what the law concerns itself with, that the object of the judgment shall not remain eternally in suspense, but be delivered into the quiet and undisturbed possession of the successful litigant. This is what the Code means when it says that `The authority of the thing adjudged takes place only with respect to what was the object of the judgment.' The law by virtue of which the object of the judgment is delivered is no part of the object of the judgment. It is only one of the reasons for judgment, and res judicata does not take place with respect to the reasons for judgment, but `only with respect to what was the object of the judgment.' Res judicata deals, if we may so express ourselves, with the decree of the court, as contradistinguished from the judgment of the court. To give it a wider scope than this is to confound it with stare decisis. The office and function and utility of res judicata is not to settle law questions, but to lend stability to a decree in order that such decree may have effect."
Under this rationale, the court in State v. American Sugar Refining Company overruled the exception of res judicata on the basis that the thing demanded was not the same. The licenses for the years 1900 and 1901 arose out of defendant's doing business after the prior litigation was completed. Hence, the demand was based on *731 different facts and gave rise to a different cause of action.
In Carpenter v. Metropolitan Life Insurance Company, 167 So. 223 (Orl.La.App. 1936), the court followed the rationale of the American Sugar Refining Company case. In Carpenter, the former suit was for benefits under a disability insurance policy. The defense was that the policy had been canceled. Since this was a factual issue determined adversely to the plaintiff, the court held that a subsequent suit for benefits accruing after the prior suit was barred by res judicata. The court held:
It is settled by the jurisprudence that a court has the right to reconsider questions of law previously determined between the same parties, provided that the thing demanded has come into existence at a different time from the thing demanded in the prior litigation.
But, where the dispute has been determined on questions of fact, the principle of res judicata precludes the court from entertaining it again, even though the thing demanded may not be idential with relation to the time of accrual as the thing demanded in the first suit."
Applying the rationale of these cases, the thing demanded in the present case is not the same as that demanded in the prior litigation. The principal issue in the previous suit was one of law, i. e., whether the statute should be construed so as to make the various sources of income to the fund cumulative. The court's decision on this issue of law is not res judicata.
As to the factual issues, it is true that in the prior suit plaintiff prayed for matching funds for the fiscal year 1970-71, in addition to previous years. Judgment was rendered awarding the contributions due for the years 1968-69 and 1969-70, but the claim for 1970-71 was found to be premature. The factual issues on the merits of the 1970-71 payment were not before the court and hence were not decided. Res judicata does not apply to matters raised by the pleadings, but not disposed of by judgment, In re Craven, 178 La. 372, 151 So. 625 (1931) and cases cited therein. The prior judgment is therefore not res judicata as to the 1970-71 contribution.
A further argument by the mayor is that the plaintiff's failure to appeal or answer the appeal in the prior litigation, to request a modification in the judgment so as to order payment for the year 1970-71, causes the prior judgment to be res judicata. This argument has no merit. As stated above, the obvious reason the judgment in the first case did not make an award for the 1970-71 is that this part of the claim was premature. At the time of the trial the payment for 1970-71 was not due, and hence no evidence could be introduced to show whether it was paid. Even if the plaintiff had appealed or answered the appeal, the Court of Appeal could not have rendered judgment as to the 1970-71 payment because the record did not show whether it had been paid. The factual issues as to the 1970-71 payment were not before either the trial or appellate courts in the previous litigation. Therefore, that judgment is not the basis of res judicata here.
The next issue is the contention of the mayor of the City of Lake Charles that the writ of mandamus should not issue because he has no ministerial duty to pay the plaintiff the funds sought. LSA-C.C.P. Article 3863 provides in pertinent part: "A writ of mandamus may be directed to a public officer to compel the performance of a ministerial duty required by law,..." (Emphasis supplied) The Official Revision Comment under LSA-C.C.P. Article 3863 states:
"(b) The following rules established by the jurisprudence are retained:
"Mandamus will issue only when there is a clear and specific right to be enforced or a duty which ought to be performed. *732 It never issues in doubtful cases. It may be used only to compel the performance of purely ministerial duties. State ex rel. Hutton v. City of Baton Rouge, 217 La. 857, 47 So.2d 665 (1950); State ex rel. Loraine, Inc. v. Adjustment Board, 220 La. 708, 57 So.2d 409 (1952)."
Under Article 3863, it is clear that the writ cannot issue unless there is some law which requires the mayor to pay to the plaintiff the funds sought. Act 186 of 1944 was amended by Act 236 of 1970 to read in pertinent part as follows:
"Section 9. The Firemen's Pension and Relief Fund shall consist of the following:
* * * * * *
"(4) A sum equal to 4% of the total salary of all employees of the Fire Department to be paid into the fund by the City of Lake Charles; the said City of Lake Charles being hereby authorized and directed to pay over into said fund annually, a sum equal to the total sum paid over into the fund from the payroll deductions of all employees of the Fire Department." (Emphasis supplied)
Under these provisions, the City of Lake Charles, not the mayor, is "authorized and directed to pay" the funds sought. The statute provides no ministerial duty by the mayor to pay these funds. Furthermore, there is no evidence of any city ordinance or other law which places this duty on the mayor.
In a supplemental brief, plaintiff argues that where a governmental board, agent or body has a ministerial duty provided by law to pay certain funds, its fiscal officer can be named as the sole party defendant in a mandamus action to perform that duty. Plaintiff cites first Lambert v. LaBruyere, 154 So.2d 466 (La.App., 4th Cir. 1963), where a contractor sought a writ of mandamus to compel the parish finance director to pay certain sums due under a construction contract. The facts showed that the parish council had accepted the work and authorized the payment, but the fiscal officer had refused to issue the check. The Lambert case is distinguished from the present matter in that here there is no evidence to show the City Council has authorized the payment of these funds.
Plaintiff also cites Wagner v. Redmond, 127 So.2d 275 (La.App.4th Cir. 1960), in which a member of the School Board sought a writ of mandamus to compel the Superintendent of Schools to furnish the names and addresses of pupils enrolled in certain schools. The State Statute, LSA-R.S. 17:93, required the Superintendent to keep a record of all documents connected with his office and to make them available for inspection at any time by any officer or citizen. But the School Board had passed a rule requiring the Superintendent to keep such information secret. The court held that the State Statute controlled, and that the writ of mandamus should issue to compel the Superintendent to disclose this information. The Wagner case is also distinguished. In Wagner a State Statute provided a ministerial duty by the School Superintendent. In the present case there is no State Statute, ordinance or other law which provides a ministerial duty by the mayor to pay the funds sought.
We conclude the writ of mandamus cannot issue against the mayor alone because he has no ministerial duty within the meaning of LSA-C.C.P. Article 3863.
The plaintiff alternatively requests that in the event we find the writ cannot issue against the mayor alone we should remand the case for amendment to include the City of Lake Charles as an indispensable party, under LSA-C.C.P. Article 646 which provides:
"When the failure to join an indispensable party is pleaded successfully in or noticed by a trial court, the latter may permit amendment of the petition so as to make him a party, and may reopen the case if it has been submitted and further evidence is necessary. When such failure is pleaded successfully in or noticed *733 by an appellate court, the latter may remand the case for such amendment and further evidence.
LSA-C.C.P. Article 641 defines indispensable parties as follows:
"Indispensable parties to an action are those whose interests in the subject matter are so interrelated, and would be so directly affected by the judgment, that a complete and equitable adjudication of the controversy cannot be made unless they are joined in the action.
"No adjudication of an action can be made unless all indispensable parties are joined therein."
It is clear that the City of Lake Charles is an indispensable party defendant, for it is the party directed by the statute to pay the funds.
We find Article 646 should be applied here. Accordingly, we will remand this case to the district court to permit amendment of plaintiff's petition to make the City of Lake Charles a party defendant, and to reopen the case for further evidence and other proceedings according to law.
For the reasons assigned, the judgment appealed is affirmed insofar as it overruled the exception of res judicata. The judgment is reversed and set aside insofar as it orders the issuance of a writ of mandamus solely against James E. Sudduth, Mayor of the City of Lake Charles. This case is remanded to the district court to permit the plaintiff to amend its petition to make the City of Lake Charles a party defendant, and to reopen the case for further evidence. If plaintiff so amends its petition within 15 days after this judgment becomes final, further proceedings may be had in accordance with law and the views expressed herein. If plaintiff fails to so amend its petition within 15 days after this judgment becomes final, its suit shall be dismissed. All costs of this appeal are assessed against the plaintiff appellee. All costs in the district court shall await a final determination there.
Affirmed in part, reversed in part and remanded.